**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

ESURANCE PROPERTY AND CASUALTY INSURANCE COMPANY,

Plaintiff,

vs.

JOSHUA REED *et al.*,

Defendants.

Case No.: 2:25-cv-00698-GMN-DJA

**ORDER GRANTING MOTION FOR DEFAULT JUDGMENT**

Pending before the Court is the Motion for Default Judgment, (ECF No. 12), filed by Plaintiff Esurance Property and Casualty Insurance Company ("Esurance"). Defendants Joshua Reed and Nasir Warfield did not appear in this action or file a Response. For the reasons discussed below, the Court GRANTS Plaintiff's Motion for Default Judgment.

## I. BACKGROUND

Plaintiff Esurance is a California-based insurance company that issued a policy ("the Policy") on behalf of Defendant Reed, a citizen of Nevada. (Compl. ¶ 1, ECF No. 1). The Policy provided Reed with bodily injury liability insurance with a limit of $25,000 per person. (*Id.* ¶ 11); (*see also* Policy at 3, ECF No. 12-1).

On October 8, 2022, Reed permitted Defendant Warfield, also a citizen of Nevada, to operate Reed's vehicle. (Compl. ¶ 9). That day, Warfield was involved in a motor vehicle accident in which he rear-ended a vehicle operated by Makenzie Wadkins. (*Id.*). Warfield fled the scene and was later arrested for driving under the influence. (*Id.*). Plaintiff was notified of the loss four days later, at which point it opened a claim. (*Id.* ¶ 12).

On November 29, 2022, Wadkins' attorney sent Plaintiff a "time limited demand" with a December 19 deadline to accept. (*Id.* ¶ 13). Plaintiff did not respond by the deadline,

prompting Wadkins' attorney to send Plaintiff a second letter on February 13, 2023. (*Id.* ¶ 14). Plaintiff responded to the second letter nine days later, offering Wadkins the full $25,000 liability limit set by the Policy. (*Id.* ¶ 15). Plaintiff alleges that the two-month delay in responding to the first letter was "the result of unintentional inadvertence and mistake." (*Id.* ¶ 14). Nevertheless, Wadkins rejected Plaintiff's offer and asserted that the Policy is "opened" because of Plaintiff's delayed response. (*Id.* ¶ 16); (*see also* Wadkins Letter, ECF No. 12-4).

On May 18, 2023, Wadkins filed a lawsuit against Defendants in the Eighth Judicial District Court, County of Clark, Nevada, asserting claims for negligence against Defendants Warfield and Reed and seeking compensatory and punitive damages. (State Compl. ¶¶ 40–83, ECF No. 12-2).

On April 21, 2025, Plaintiff commenced this action by filing its Complaint against Defendants which seeks relief in the form of declaratory judgment. (Compl. ¶¶ 22–26, ECF No. 1). Specifically, Plaintiff asks the Court to declare that (1) it is not obligated to provide bodily injury liability benefits beyond the $25,000 limit set by the Policy, (2) it is not liable for any punitive damages as a result of Warfield's conduct, and (3) it is not liable for any extracontractual claims as a result of its conduct in the adjustment of the claim and defense of the underlying suit, including claims for breach of implied covenant of good faith and fair dealing or any violation of Nevada's Unfair Claims Practices Act, Nev. Rev. Stat. 686A.310. (*Id.*).

Defendants failed to answer or otherwise appear in this case. Plaintiff moved for entry of default, and the Clerk entered default on November 11, 2025, pursuant to Rule 55(a) of the Federal Rules of Civil Procedure. (Mot. Entry Default, ECF No. 10); (Entry of Default, ECF No. 11). Plaintiff now moves for default judgment under Federal Rule of Civil Procedure 55(b). (Mot. Default J., ECF No. 12).

## II. LEGAL STANDARD

Obtaining default judgment is a two-step process governed by Rule 55 of the Federal Rules of Civil Procedure ("FRCP"). *See Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986). First, the moving party must seek an entry of default from the clerk of court. Fed. R. Civ. P. 55(a). Entry of default is only appropriate when a party "has failed to plead or otherwise defend." *Id.* After the clerk enters the default, a party must then separately seek entry of default judgment from the court in accordance with FRCP 55(b). Fed. R. Civ. P. 55(b). Upon entry of a clerk's default, the court takes the factual allegations in the complaint as true, except those relating to the amount of damages. *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (per curiam).

## III. DISCUSSION

As an initial matter, Plaintiff has satisfied the first step of the two-step process for obtaining default judgment. Pursuant to FRCP 55(a), the Clerk of the Court correctly entered default against Defendants because they have not appeared in this case. (*See* Entry of Default). The Court first determines whether it has jurisdiction over this case before turning to the *Eitel* factors.

### A. Jurisdiction

"When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). This action meets diversity jurisdiction requirements because the parties are diverse, (Compl. ¶ 1–3, 5), and Plaintiff's declaratory relief claims arise from its potential liability to a third party, Wadkins, whose state court lawsuit alleges injury and medical costs of $75,000 in addition to as-yet-undetermined property damages and punitive damages. (Compl. ¶ 5); (State Compl. 13:4–22); (*see also* Claim Log, ECF No. 1-1 (claiming medical special damages in excess of $110,000)).

Further, this Court has personal jurisdiction over Defendants because the incident giving rise to the cause of action—the October 2022 motor vehicle accident—occurred in Las Vegas, Nevada. (Compl. ¶ 9, ECF No. 1).

However, satisfying statutory jurisdictional requirements does not end the inquiry. Because Plaintiff here brings a declaratory judgment action, the Court must determine, in its discretion, whether to exercise jurisdiction. *See Gov't Emp. Ins. Co. v. Dizol*, 133 F.3d 1220, 1222–23 (9th Cir. 1998). Further, because Plaintiff seeks a default judgment, the Court must examine the adequacy of service of process. *Bank of West v. RMA Lumber Inc.*, No. C 07-06469 JSW, 2008 WL 2474650, at *2 (N.D. Cal. June 17, 2008). The Court addresses each in turn.

**1. *Brillhart* Factors**

Under the Declaratory Judgment Act, the Court has discretion to decide to issue a declaratory judgment on "the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). When determining whether to exercise jurisdiction, the Court must consider three factors: "(1) avoidance of needless determination of state law issues; (2) discouragement of the use of declaratory actions as a means of forum shopping; and (3) avoidance of duplicative litigation." *Allstate Fire & Cas. Ins. Co. v. Diamond*, No. 2:14-cv-1044, 2015 WL 265422, at *2 (D. Nev. Jan 21, 2015) (citing *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942)). Federal courts should "decline to assert jurisdiction" in "declaratory relief actions presenting only issues of state law during the pendency of parallel proceedings in state court unless there are circumstances present to warrant an exception to that rule." *Emp'rs. Reinsurance Corp. v. Karussos*, 65 F.3d 796, 798 (9th Cir. 1995) (internal quotations omitted), *overruled in part on other grounds*, *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220 (9th Cir. 1998). Since Plaintiff's suit in this Court is related to an ongoing suit in

state court (to which Plaintiff is not a party), the Court will address the application of the *Brillhart* factors.

The first *Brillhart* factor —discouraging needless litigation of state-law issues—does not weigh against exercising jurisdiction. Plaintiff seeks a declaration stating that it adhered to Nevada law when carrying out its obligations under the Policy. (*See* Compl. ¶¶ 22–26). It raises questions of state law with respect to both the implied covenant of good faith and fair dealing and interpretation of insurance contracts under Nevada law. *See Allstate Fire*, 2015 WL 265422, at *2 (D. Nev. Jan. 21, 2015); *Cincinnati Specialty Underwriters Ins. Co. v. Red Rock Hounds*, 511 F. Supp. 3d 1105, 1111 (D. Nev. 2021). However, the impetus of *Brillhart* was to prevent "uneconomical" and "vexatious" federal suits where a state court case "present[ed] the same issues . . . between the same parties." *Brillhart*, 316 U.S. at 495. Here, Plaintiff is not a party to the related state action, (Compl. ¶ 10), and Wadkins' suit against Defendants does not address the "same issues." The related state action involves a tort claim between Wadkins and Defendants, while the present action is a contract claim between Plaintiff and insured Defendants. *See Red Rock Hounds*, 511 F. Supp. 3d at 1111 (noting that related state court action did not involve the same issues as the federal action because the former involved a tort claim while the latter involved a contract claim). Consequently, although the Court "recognizes that it may need to determine the rights of the parties under Nevada law, the concerns expressed by the first *Brillhart* factor are not implicated here." *Id.*

The second *Brillhart* factor—discouraging forum shopping—is neutral in this case. Although Plaintiff could perhaps have filed the same case in state court in Nevada, there is no evidence in the record that it chose to file in federal court "as a means of forum shopping." *See Allstate Fire*, 2015 WL 265422, at *2.

The third *Brillhart* factor—avoiding duplicative litigation—is, like the second factor, ultimately neutral. Determining whether Plaintiff must indemnify Defendants in the underlying

state court litigation would not involve a finding that Defendants acted negligently in the motor vehicle accident with Wadkins. *See Red Rock Hounds*, 511 F. Supp. 3d. at 1112. Plaintiff raises issues of insurance contract interpretation and good-faith dealings, which are "dissimilar" from Wadkins' ongoing negligence claim in state court. *Id.*

Because the *Brillhart* factors do not weigh in favor of abstention, the Court will exercise jurisdiction over Plaintiff's declaratory judgment action.

**2. Service**

"A federal court does not have jurisdiction over a defendant unless the defendant has been served properly under [FRCP 4]." *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988).

Here, Plaintiff has filed affidavits from its process servers, stating that they attempted service on Defendants on many occasions and in various manners. For Defendant Warfield, Plaintiff's process server visited his last known address on two occasions, contacted his leasing office and was informed that he had moved, and contacted his probation officer, who said that Warfield had absconded. (Warfield Aff. Non-Serv. ¶¶ 4–7, ECF No. 5-6). For Defendant Reed, Plaintiff's process server visited his last known address on three occasions (and was informed at the third visit that Reed did not live there), called five phone numbers associated with Reed, and attempted to contact him via social media. (Reed Aff. Non-Serv. ¶¶ 4–7, ECF No. 5-7). In addition, Plaintiff claims that it undertook extensive attempts to reach both Defendants with regard to Wadkins' insurance claim and eventually the underlying state court litigation, several years before the commencement of the present action. (Mot. Leave Serve by Pub. 5:6–18, ECF No. 5). As evidence, Plaintiff submitted records of letters and emails sent to Defendants, an investigative report that tracked Defendants' location and contact information across several states, and affidavits of non-service from the process servers. (Letters from Plaintiff to

Defendants, ECF No. 5-2); (Aff. Due Diligence, ECF No. 5-3); (Investigative Report, ECF No. 5-5).

In June 2025, Plaintiff filed a Motion for Leave to Serve by Publication, (ECF No. 5). Because Defendants were unresponsive and could not be reached by Plaintiff or Plaintiff's process servers at any point since the underlying car accident, Magistrate Judge Daniel J. Albregts granted Plaintiff's motion and ordered Plaintiff to publish its summons in the Nevada Legal News at least once per week for a period of four weeks, in accordance with NRCP 4.4(c)(4)(A). (Order Granting Mot. Leave Serve by Pub. 4:9–13, ECF No. 7). Plaintiff was also required to mail a copy of the summons, complaint, and court order to each Defendant's last-known address, in accordance with NRCP 4.4(c)(4)(B). (*Id.*).

On October 20, 2025, Plaintiff filed an affidavit from the Publisher of the Nevada Legal News stating that the summons for both Defendants were published on September 23, September 30, October 4, and October 14. (Aff. Pub., ECF No. 8). Plaintiff's attorney also filed a Certificate of Mailing on October 20, certifying that the summons, Complaint, and Judge Albregts's Order were mailed to each Defendant's last-known address. (Cert. Mailing, ECF No. 9). Plaintiff therefore complied with NRCP 4.4(c) and the Judge Albregts's Order. Thus, service was completed "in substantial compliance with [FRCP] 4," giving this Court jurisdiction over Defendants. *Crowley v. Bannister*, 734 F.3d 967, 975 (9th Cir. 2013).

**B. *Eitel* Factors**

In determining whether to grant default judgment, courts are guided by the following seven factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong public policy favoring decisions on the merits. *Eitel*, 782 F.2d at 1471–72. The Court will address each factor in turn.

**1. Possibility of Prejudice to the Plaintiff**

A defendant's failure to respond or otherwise appear in a case "prejudices a plaintiff's ability to pursue its claims on the merits." *See, e.g.*, *Nationstar Mortg. LLC v. Operture, Inc.*, No: 2:17-cv-03056, 2019 WL 1027990, at *2 (D. Nev. Mar. 4, 2019); *see also PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("If Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery.").

The first *Eitel* factor weighs in favor of granting Plaintiff's motion because it will otherwise be denied recourse for a final determination of its policy obligations. *See Liberty Ins. Underwriters Inc. v. Scudier*, 53 F. Supp. 3d 1308, 1318 (D. Nev. 2013). Plaintiff filed this action in order to determine its rights or duties with regard to the claims asserted against it. Without the entry of default judgment, Plaintiff could be asked to defend or indemnify Defendants against the claims filed in the underlying suit in excess of the $25,000 limit set by the Policy or could be liable for punitive damages in the underlying state court litigation. Plaintiff has no other means to secure a declaration of its rights and obligations towards Defendants or towards Wadkins. Thus, the Court finds this potential prejudice weighs in favor of granting a default judgment. *See Scudier*, 53 F. Supp. 3d at 1318; *see also Progressive Universal Ins. Co. v. Minica*, No. 2:22-CV-01573, 2023 WL 5435976, at *3 (D. Or. July 18, 2023), *report and recommendation adopted*, 2023 WL 5432527 (D. Or. Aug. 23, 2023).

**2. Plaintiff's Substantive Claims and the Sufficiency of the Complaint**

The second and third factors focus on the merits of Plaintiff's substantive claims and the sufficiency of the complaint. *See Eitel*, 782 F.2d at 1471. These factors, often analyzed together, require courts to determine whether a plaintiff has "state[d] a claim on which [it] may recover." *PepsiCo*, 238 F. Supp. 2d at 1175. Courts often consider these factors "the most important." *Vietnam Reform Party v. Viet Tan – Vietnam Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019). If a district court has "serious reservations" about the merits of a

plaintiff's claims based on the pleadings, these factors weigh in favor of denying default judgment. *See Eitel*, 782 F.2d at 1472. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "Where the allegations in a complaint are not 'well-pleaded,' liability is not established by virtue of the defendant's default and default judgment should not be entered." *See Adobe Sys., Inc. v. Tilley*, No. 3:09-cv-1085, 2010 WL 309249, at *3 (N.D. Cal. Jan. 19, 2010). "[C]laims which are legally insufficient are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

Upon default, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1997). Although Plaintiff attached the Policy as an exhibit to its Motion for Default Judgment, (ECF No. 12-2), rather than to the Complaint, the Policy is integral to the complaint. The Complaint "necessarily relies upon" it, its "authenticity is not in question," and "there are no disputed issues as to [its] relevance." *Coto Settlement v. Eisenberg*, 593 F.3d 1031 (9th Cir. 2010); *see also Ecological Rts. Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 511 (9th Cir. 2013). Thus, the Court finds that the contents of the Policy may be considered in the present motion. *See also Great Am. Ins. Co. v. Revolutionary Prods. Inc.*, No. 24-cv-1001, 2025 WL 2437530, at *8 (E.D. Cal. Aug. 25, 2025) (incorporating by reference a document "not physically attached to the complaint" in a motion for default judgment), *report and recommendation adopted*, 2025 WL 2778363 (E.D. Cal. Sept. 30, 2025); *Bernardo v. Davis Davis & Assocs. LLC*, No. 5:21-cv-2010, 2022 WL 2101910, at *3 n.2 (C.D. Cal. Mar. 31, 2022) (same).

Plaintiff presents three separate claims related to its rights and obligations towards Defendants. The Court will address each in turn. Because the question of whether Plaintiff

acted in good or bad faith is relevant to the questions of indemnity and punitive damages, the Court will address it first.

**a. Covenant of Good Faith and Fair Dealing**

Plaintiff first seeks a determination that "it did not breach the covenant of good faith and fair dealing" or violate the Nevada Unfair Claims Practices Act, Nev. Rev. Stat. ("NRS") 686A.310. (Compl. ¶ 26).

"Bad faith is established where the insurer acts unreasonably and with knowledge that there is no reasonable basis for its conduct," such as the "unreasonable denial or delay in payment of a valid claim." *Guar. Nat'l Ins. Co. v. Potter*, 912 P.2d 267, 272 (Nev. 1996). "Poor judgment or negligence on the part of an insurer does not amount to bad faith." *USF Ins. Co. v. Smith's Food & Drug Ctr., Inc.*, 921 F. Supp. 2d 1082, 1093 (D. Nev. 2013), *as corrected* (Mar. 27, 2013). A similar principle is embodied in NRS 686A.310, under which "[f]ailing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies" is "considered to be an unfair practice" that could open an insurer to liability "for any damages sustained by the insured as a result." NRS 686A.310(1)(b), (2).

Plaintiff plausibly alleges that the twelve-week lapse between receiving Wadkins' first letter and making its eventual settlement offer was caused by "unintentional inadvertence and mistake due to a change in staff assignment within the claims department." (Compl. ¶ 14). Plaintiff's allegations, taken as true, establish that at worst, it acted with "poor judgment or negligence," *USF Ins. Co.*, 921 F. Supp. 2d at 1093. Thus, Plaintiff has plausibly alleged that it did not act in bad faith—and did not breach the implied covenant of good faith and fair dealing—in its negotiations with Wadkins. The second and third *Eitel* factors therefore weigh in favor of default judgment for Plaintiff regarding its compliance with the covenant of good faith and fair dealing and NRS 686A.310.

**b. Indemnity Above Policy Limits**

Plaintiff next claims that it is not obligated to pay bodily injury liability limits to Wadkins beyond the $25,000 limit set by the Policy. (Compl. ¶ 23).

The Complaint states a plausible claim that coverage under the Policy for the claims Wadkins alleges against Defendants is set at a maximum of $25,000. (*Id.* ¶ 11). The Policy lists the "bodily injury" liability coverage of "25,000/person" and explains that this is Plaintiff's "maximum limit of liability for all damages." (Policy at 3, 13–14).

While insurance policy limits can be set aside if the insurer acted in bad faith during the settlement process, Plaintiff, as discussed above, has plausibly alleged that it acted in good faith throughout its communications with Wadkins. *See*, *e.g.*, *Jimenez v. GEICO Secure Ins. Co.*, 730 F. Supp. 3d 1091, 1095 (D. Nev. 2024). The second and third *Eitel* factors therefore weigh in favor of default judgment for the Plaintiff with respect to its obligation to indemnify Defendants above the $25,000 contractual limit.

**c. Obligation to Pay Punitive Damages**

Finally, Plaintiff claims that it is not obligated to pay any punitive damages that may be awarded against Defendants in the underlying state court litigation. (Compl. ¶ 26).

The Complaint states a plausible claim that Defendant Reed's coverage does not extend to punitive damages, alleging that the latter "are specifically excluded from coverage under the [Policy]." (*Id.* ¶ 21). The Policy states that Plaintiff "will not pay for punitive or exemplary damages" as part of its liability coverage. (Policy at 3).

While Plaintiff delayed in responding to the first letter from Wadkins' counsel, the delay does not oblige Plaintiff to pay punitive damages specifically excluded the Policy. As discussed above, Plaintiff has plausibly alleged that it did not act in bad faith in responding to Wadkins. In addition, Nevada law "clearly prohibits, on grounds of public policy, indemnification for punitive damages." *Lombardi v. Md. Cas. Co.*, 894 F. Supp. 369, 372 (D.

Nev. 1995) (first citing *Siggelkow v. Phoenix Ins. Co.*, 846 P.2d 303 (Nev. 1993); and then citing *N.H. Ins. Co. v. Gruhn*, 670 P.2d 941 (Nev. 1983)). The second and third *Eitel* factors therefore weigh in favor of default judgment for the Plaintiff with respect to its obligation to pay punitive damages in the underlying state court litigation.

**3. Sum of Money at Stake in the Action**

The fourth *Eitel* factor addresses the damages at stake in the action. *See Eitel*, 782 F.2d at 1471. The Court considers "the amount of money requested in relation to the seriousness of the defendant's conduct, whether large sums of money are involved, and whether 'the recovery sought is proportional to the harm caused by [the] defendant's conduct.'" *Next Gaming, LLC v. Glob. Gaming Grp., Inc.*, No. 2:14-cv-00071, 2016 WL 3750651, at *3 (D. Nev. July 13, 2016) (quoting *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 921 (C.D. Cal. 2010)).

Here, Plaintiff seeks only declaratory relief concerning its obligations to Defendants. (Compl. ¶¶ 22–26). Because there is no money directly at stake in this litigation, the court finds that this factor weighs in favor of granting default judgment. *See PepsiCo*, 238 F. Supp. 2d at 1177; *Scudier*, 53 F. Supp. 3d at 1318.

**4. Possibility of a Dispute Concerning Material Facts**

The fifth *Eitel* factor evaluates the possibility of dispute as to any material facts in the case. *PepsiCo*, 238 F. Supp. 2d at 1177. Once the Clerk of Court enters default, all well-pleaded facts in complaint, except those relating to damages, are taken as true. *Id.* Here, Plaintiff filed a well-pleaded Complaint alleging the facts necessary to establish its claims, and the Clerk entered default against Defendants. (Entry of Default, ECF No. 11). Thus, no dispute has been raised regarding the material averments of the complaint, and the likelihood that any genuine issue may exist is not high. This factor therefore favors the entry of default.

**5. Excusable Neglect**

The sixth factor considers whether Defendants' defaults are due to excusable neglect. *Id.* If a defendant is "properly served with the Complaint, the notice of entry of default, as well as the papers in support of the instant motion," the default "cannot be attributed to excusable neglect." *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001).

As previously discussed, Plaintiff was unable to reach either Defendant for service of the Complaint and ultimately obtained an Order granting permission to serve Defendants by publication. Defendants have failed to respond to Plaintiff's communications ever since the October 2022 car accident at issue in the underlying litigation, over two years before the present action was initiated in this Court. There is no evidence before the Court that suggests Defendants' failure to respond was due to excusable neglect. Rather, Defendants' failure to respond to the Complaint in this case is consistent with their behavior since the accident that formed the basis of the underlying litigation. This factor therefore weighs in favor of default judgment.

**6. Policy for Deciding on the Merits**

The final factor weighs against default judgment. As the Ninth Circuit explained in *Eitel*, "default judgments are ordinarily disfavored." 782 F.2d at 1472. "Cases should be decided upon their merits whenever reasonably possible." *Id.* But the existence of FRCP 55(b) "indicates that this preference, standing alone, is not dispositive." *PepsiCo,* 238 F. Supp. 2d at 1177 (internal quotations omitted). Defendants' failure to answer or otherwise respond to the complaint "makes a decision on the merits impractical, if not impossible." *See id.*

Evaluating the *Eitel* factors as applied to this case, the Court finds that the majority of the factors support the entry of default judgment and concludes that the entry of default judgment against Defendants is appropriate.

**C. Relief Requested**

A default judgment cannot differ "in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(b). Here, Plaintiff's claim for relief is the entry of a declaratory judgment that (1) it is not obligated to pay bodily injury liability limits beyond the $25,000.00 limits provided in the Policy; (2) it is not obligated to pay any punitive damages that may be awarded against Defendants in the underlying state suit filed against them by Wadkins; and (3) it is not liable for any extracontractual claims as a result of its conduct in the adjustment of the claim and defense of the underlying suit, including claims for breach of the implied covenant of good faith and fair dealing or any violation of Nevada's Unfair Claims Practices Act. (Compl. ¶¶ 22–26).

As discussed above, Plaintiff's well-pled allegations, when taken as true, show that it is entitled to such relief.

**IV. <u>CONCLUSION</u>**

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Default Judgment, (ECF No. 12), is **GRANTED**. The Court finds that Plaintiff does not have a duty to defend or indemnify Defendants beyond the $25,000 limit set by Defendant Reed's insurance policy. The Court further finds that Plaintiff does not have a duty to pay any punitive damages awarded against Defendants in the underlying state court litigation. Finally, the Court finds that Plaintiff is not liable for any extracontractual claims arising from its conduct in the adjustment of the claim and defense of the underlying suit, including claims for breach of implied covenant of good

///

///

///

///

///

faith and fair dealing or any violation of Nevada's Unfair Claims Practices Act.

**DATED** this 28 day of August, 2026.

Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT